## THE WM. KRAFT.

### SNOWDEN *et al.* *v.* HODGSON *et al.*

#### (*District Court, W. D. Pennsylvania.* January 13, 1888.)

COLLISION WITH PIER — TUG AND TOW — UNSAFE CONDITION OF TOW—KNOWL-EDGE OF RISK.

A tow-boat, having a tow in charge, attempted to run past the piers of a bridge on a bad night, and in a high wind. The tow collided with one of the piers, and sunk. The impingement, however, was so slight that if the tow had been in good order no serious mischief would have ensued. When the trip was undertaken it was known to both the owners of the tow and the master of the tow-boat that the tow was unfit to encounter the hazards of the trip. *Held*, that negligence was imputable to both parties, and but half damages were recoverable by the owners of the tow.

In Admiralty.

Libel by C. L. Snowden & Co. against Henry M. Hodgson and others, late owners of the tow-boat The Wm. Kraft, to recover damages for negligent towage, causing loss of libelant's boat.

*Knox & Reed*, for libelants.

*Isaac S. Van Voorhis*, for respondents.

ACHESON, J. It has been held that it is negligence in both the owner of the tow and the master of the tug to proceed on a voyage with a tow known to both to be unfit to encounter the hazards of the trip, and, in case of the loss of the tow due to such concurrent negligence, the damages should be equally divided between the parties. *Mason* v. *The Wm. Murtaugh*, 3 Fed. Rep. 404; *The Wm. Cox*, 9 Fed. Rep. 672; *Connolly* v. *Ross*, 11 Fed. Rep. 342; *The Bordentown*, 16 Fed. Rep. 270. A careful consideration of the proofs in this case has brought me to the conclusion that this principle is justly applicable here. The libelants' flat-boat was very old,—well nigh worn out,—and had been sided up to hold a cargo of nut-coal, with which it was loaded deep down in the water; and it was leaking badly. These facts were known to Brown, the master of the Wm.

Kraft, and to Sloan, the engineer and one of the owners of the boat. They both hesitated to take the flat-boat in charge because they considered it hazardous to undertake to tow it in its bad condition. The Wm. Kraft hitched to the flat-boat after dark, about 8 or 9 o'clock. Sloan says: "The night was very windy and bad." The risky condition of the flat-boat was fully known to the libelants, or at least to their agent, Livingston, who delivered it to the tow-boat. I think it clear that the immediate cause of the sinking of the flat-boat was its collision with the pier of the Redstone bridge. But the impingement was so slight that if the flat-boat had been staunch and in good order; it is not at all likely that any serious mischief would have ensued. Indeed, the unfit condition of the tow contributed directly to the disaster. But then, on the other hand, as the master of the Wm. Kraft had undertaken to tow a flat-boat known to be so tender as not to be able to endure knocks which would not hurt sound vessels, it was his duty to exercise care commensurate with the necessities of the occasion, and he should not have attempted to run past the piers of the bridge on a bad night, and in a high wind. *The Mohler*, 21 Wall. 230.

The alleged agreement that the flat-boat should be towed at the risk of the owners is not satisfactorily established. This is not set up in the answer, and neither Brown nor Sloan testifies to any such agreement or understanding. This defense, urged at the hearing, rests exclusively upon the unsupported recollection of two bystanders, Province and Swaine, as to the language which (they say) Sloan used in his conversation with Livingston when the flat was taken in tow. But the proofs in the whole do not sustain this defense.

As there was a necessity to remove the wreck out of the channel of the river, I think the cost thereof is a proper item of claim here. Correcting, then, the mistake admitted to exist in the libelants' bill, the damages are as follows. viz.:

| | | |
|---|---|---|
| Number of bushels of nut coal, | | 6,100 |
| Contract price per bushel, (including flat-boat,) | | 7 cts. |
| | | $427 00 |
| Deduct for towage and tolls, | | 31 16 |
| | | $395 84 |
| Add cost of removing wreck, | | 177 92 |
| Total damages, | | $573 76 |

The libelants are entitled to a decree for one-half of the damages, viz., $286.88, with interest thereon from the date of suit. The unexplained delay in suing justly deprives the libelants of interest from the date of the loss.

Let a decree be drawn in accordance with this opinion.